Good morning, Your Honors. Candace Mitchell on behalf of Mr. Ramos-Cruz. Mr. Ramos-Cruz's indictment should have been dismissed before the District Court pursuant to the clear precedent established by this Court in United States v. Arias-Odonis. In Mr. Ramos-Cruz's case, the plain language of 1326d compels that when an entry of an initial deportation order is found to be invalid by subsequent precedent, then that deportation order is invalid and no lien statements of that deportation order can be used in a 1326 prosecution. Because of this, Mr. Ramos-Cruz's initial deportation order, which was entered as a result of an aggravated felony due to a DUI, should not have stood in the prosecution against him in the 1326d case as the lien statement that the government was seeking to use to prosecute him in the case was based on that initial deportation order. At the time, was it an aggravated felony? Wasn't that the state of the law? At the time, it was, it had not been decided as to whether or not California DUI was actually an aggravated felony. What had happened was there were other decisions and other, the BIA had made decisions regarding Arizona and Texas. However, the California one had not been decided. There was no actual case law, and the government's briefing indicates that there is no actual case law that stated that California DUI was an aggravated felony. So what was the basis for the IJ's conclusion that the DUI at that time was an aggravated felony? The immigration judge at that time did not indicate on the record anything other than, further than a specific finding that it was an aggravated felony. He just simply stated that the DUI was an aggravated felony. Because of that, Mr. Ramos-Cruz was deportable as charged, and he did not give Mr. Ramos-Cruz any forms of relief. He didn't inform him that he could have received voluntary departure, 212-H, or any of the other forms of relief that Mr. Ramos-Cruz was entitled to. So the administrative precedent, the BIA precedent, also hadn't addressed that particular California statute, is that correct? There is no California. The particular rulings that I was able to find were INRI, Magella-Garcia, which is an INA decision about an Arizona DUI, and INRI-Puerto Salazar, which is regarding a Texas DUI, but I could not find case law indicating that the California statute itself had been decided to be an aggravated felony. And were the precedents that the IJ had before it, that the BIA had decided about other state statutes, were those state statutes analogous to the California one, or were they fairly different, so that they really wouldn't have guided the IJ's decision? I don't know for certain regarding the Arizona one, but I can indicate that the Texas one was similar to, I'm not believing that the Texas one was similar to the California one, because when Leocal was decided, and they listed the cases that they were formulating, and going through the prior cases that had previously been decided, they had listed the California statute and the Texas statute as making their decisions, or being similar in wording, in deciding that they could not be considered aggravated felonies. What I believe is most important is that 8 U.S.C. 1101-843 guides what an aggravated felony is. That's the statute that is and always has been in effect. When the Supreme Court decided Leocal, that decision made of Leocal essentially meant that aggravated felonies, DUIs could not have been aggravated felonies and never could be aggravated felonies, because as this court has found in other proceedings, and according to Harper v. Department of Taxation, new judicial decisions interpreting old statutes have long been applied retroactively to all cases open on direct review, regardless of whether the events predate or postdate the statute interpreting the decision. And that was adopted by this circuit in Morales Esquerra, 600 F. 3rd, 1090. Aren't we looking under 1326D, though, as to whether there was a due process error at the deportation hearing and whether the I.J. could fairly infer from the record that there was a form of relief available to Mr. Ramos because he had not committed an aggravated felony? And how do we determine whether there was a fair inference for the immigration judge in the absence of a case on point at the time the immigration judge was reviewing the record? Well, I think to answer your question, Your Honor, I believe that this Court's decision, recent decision in Lopez, is actually very instructive for the judges to consider all the facts that are available to it. In this case, Mr. Ramos proves at the time he was initially deported was informed he was an aggravated felon and then was never told about any forms of relief that could have even been available to him. Could you address Lopez Velazquez a little more? I'm not sure how it governs this decision, how much effect it has, but it did have some language saying that when intervening law renders an alien eligible for discretionary relief, for which he was ineligible at the time of his deportation hearing, the proper remedy is for the alien to file a motion to reopen. I don't know if that affects our review of this case or not. Can you give me your thoughts on Lopez Velazquez's effect? Well, I believe that Lopez Velazquez still reiterates that there are exceptions for when a deportation can be found invalid, and that one of those exceptions is when an immigration judge has a duty to inform an alien of relief, for which the alien will become eligible immediately, or when subsequent precedent renders a deportation invalid. And this fits into that exception. Subsequent precedent has rendered the deportation invalid. Well, now, subsequent decisions have questioned whether or not the underlying felony was an aggregated felony. But how do you deal with areola areola? It seems to suggest that if it was okay at the time, it remains okay at the time for due process purposes. I believe areola areola is actually slightly different in that areola areola addressed an immigration proceeding that was continuing on an immigration proceeding. Areola areola involved an immigrant who had been deported. There had been a change in the law, and he was coming back to try and take advantage of that. However, he had never been in a criminal prosecution. Well, but what was he told regarding the original order that it was okay even though there had been a change in the law? However, I believe that that case was focused solely on immigration proceedings, and the reason why Mr. Areola areola was denied the ability to reopen his deportation proceeding was not was due to the fact that he was in an immigration proceeding, and he was attempting to reopen that same immigration proceeding. This is materially different because It's different, but I don't quite see the distinction. Because if you're talking about a due process violation, it's a due process violation. And areola suggested that it wasn't. Areola areola suggested, in Mr. Ramos-Cruz's case, he will still have to face a deportation proceeding regardless of the decision of this court. He's still going to have to go back to a deportation proceeding. But Morales-Izquierda indicates that there's a difference between civil and criminal prosecution. So the due process violation is the fact that later on a decision was made changing the nature of the aggravated felony. The due process violation in Mr. Ramos-Cruz's case was because at the time he was initially deported, he was not an aggravated felon. Mr. Ramos-Cruz was not informed of his But it hadn't yet been decided that that was not an aggravated felony. And I think Camacho Lopez, I believe that Camacho Lopez is very illustrative of this. This court has previously held that in cases where individuals have been, when their subsequent precedence has shown that an individual, that the charge that was used for prior deportation has been no longer an aggravated felony, and so when it comes back, the precedent, the prejudice is shown if that individual is not informed of their availability to seek relief. Well, here's where I distinguish, actually, this case from Lopez-Velasquez. In Lopez-Velasquez, there was clear law at the time that the I.J. correctly applied in determining that it wasn't fairly apparent from the record that there was any eligibility for relief. In fact, under the cases, our cases, that existed at the time, he wasn't apparently eligible for relief. And so what he was arguing was that after his hearing, a subsequent change in the law that made him eligible, that the I.J. should have somehow foreseen that and acted accordingly in advising him his rights. And what we said is, no, we have to know that there's an avenue available at the time. In your case, it's slightly different, because there's actually no law that says whether or not a DUI is an aggravated felony. There's no statute, there's no case, there's nothing. It's just the I.J.'s interpretation that that conviction is an aggravated felony, which leads the I.J. in turn not to advise him of any avenues of relief. It's a different case, and so I guess it's a new animal, and I'm not quite sure how to look at it. Sometimes the Supreme Court, as in Crawford, when they decided the right to confront witnesses in these different circumstances, to confront testimonial witnesses or the authors of certain testimonial documents, they said that's always been the right. That's how the law's always been. And so regardless of all the numerous cases that ever said anything else, so that's the law from day one, that's what the Constitution means. So I get your argument is kind of more like that. DUI, since Leocal, was never an aggravated felony. So the whole failure of this proceeding to advise him of his rights was based on an incorrect interpretation of the law. As it existed then. Yes, Your Honor, and I would just as a follow-up, brief follow-up to that, because I see my time is up. The law that, there was no law that was decided at that time, and when Leocal was decided, that became the law for all in eternity. And the retroactive application of Leocal is directly applicable to what happened. Did the Supreme Court in Leocal say it was retroactive? I don't remember that. I don't remember. The Supreme Court in Leocal didn't say, state it was retroactive. No. But the application of statutes in this circuit has always been considered. New judicial decisions interpreting statutes have always been applied retroactively. To closed cases? Yes. And I would just, with that, I'll conclude my statements. Oh, one more important thing. The prosecution relied on these orders of reinstatement. And we've been searching the district court files and everything we can look at. And it appears that the orders of reinstatement, which the prosecutor relied upon in the 1326 prosecution, are not in the record. I hope counsel can shed some light on this, because it certainly couldn't have been the original deportation order that served as a whole basis for this. If there's no orders of reinstatement demonstrating that he was continued to be deported based on that order. In review of the excerpt of records, I can see that there are orders. Not the excerpts. I'm talking about we've looked at the whole record. I don't see that the reinstatement orders actually made it into the record themselves. However, Mr. Ramos Cruz had been reinstated. There were two reinstatements that were part of his immigration file overall. And he conceded that at the trial and conceded that it was based on the original one and not based on anything else? The reinstatements, yes, were solely based on the original deportation. There were no subsequent deportation orders or anything else to provide for deportation. He had no other form of deportation order that was entered for him. I sure would like to see those reinstatement orders. I don't have them here, but I could provide them to the court. Okay. May it please the Court. Steve Millick for the United States. The analysis of whether or not the defendant's or the appellant's prior deportation was valid is under 1326d, which involves whether or not there was a due process violation, whether or not he had exhausted all of his administrative rights, and whether or not there was prejudice. Now, the point here is that the main policy behind requiring a defendant to establish the prongs of 1326d is to avoid this ex post dissection of final orders. And in this case, the immigration judge believed that DUI was an aggravated felony. There was no case before that, but I believe that it was under his understanding of Title 8, United States 11-0143's inclusion of crimes where there is a substantial likelihood of harm and danger, which is the prong of Title 18, United States Code Section 16, the definition of violent crime. So the IG made a determination in the absence of any binding precedent, which later turned out to be wrong. But in other cases, like I think it's Ubaldo, Figueroa, and where we retroactively applied St. Cyr and Pallares Galan, where that case said, in that very case, the IG was wrong and, therefore, will find a due process violation. How would you distinguish those from this situation? Most of the cases where the retroactive application has to do where the immigration judge got it wrong, where he misadvised an alien or failed to advise them, despite the knowledge that a crime would not have qualified as an aggravated felony. The application of St. Cyr really doesn't have to do with the due process violation of the immigration proceeding, but the due process violation of the underlying conviction where he would not have pled guilty to that. Right, that's exactly right. St. Cyr said in all those cases where you didn't advise them of his consequences of the plea, then that's an invalid procedure. Correct. So that goes to the validity of the prior felony conviction, but doesn't really have application to the immigration. Why? Because in this case, we're not talking about whether or not the appellant's prior DUI is valid or invalid. It's whether or not the immigration judge was working with the operating assumption that the DUI was an aggravated felony. Right, but what happened was, based on an erroneous interpretation, he failed to advise Ramos of his rights to seek other avenues of relief and to appeal the decision on all of these other things. And as a result, that deportation stood. And I guess when you look at 1326D, I mean, it's obviously a question of first impression. It's very interesting to try to figure out how to decide this. But you look at, I don't know if I can get to the page again, D. So the alien must demonstrate that he exhausted. Well, he couldn't exhaust because he was told there wasn't any. The deportation proceedings improperly deprived the alien of the opportunity for judicial review. Well, it wasn't advised that he had any rights, so there was no reason for judicial review. And the entry of the order was fundamentally unfair. There's where I would disagree with, Your Honor. Which part? The exhaustion of administrative remedies. Let me ask you, do you think that it's fundamentally fair that he's now got a criminal conviction and serving an enhanced sentence for unlawful reentry following a deportation where he wasn't given any of his rights based on the IJA's incorrect interpretation of the law? Yes, it's fundamentally fair. And because I'm disputing the foundation of your operating assumption, is that the immigration judge advised him with the incorrect interpretation. There had been no interpretation at that time. But we now know it was incorrect. We now know after a subsequent case precedent saying DUI is not an aggravated felony. So that is why the appellant in this case did not exhaust his administrative remedies because it established that he had as much right to appeal that issue as Leocal and everyone who came after him. So there's no retroactive application in the final order. And the argument that there's a distinction between a civil remedy and a criminal case, well, a collateral attack of an immigration court's decision is always going to be a collateral attack upon the application of the civil law. And the recent case from two days ago was that we don't expect. No, it's really different. I know I was on the panel. And it's very different because it was established law that was in front of the IJA. And there was no basis at all for her to figure out, number one, that the law would be changed after the proceeding. And even had the law been changed and she knew it was going to be changed, she still had no remedy available because he was eight months short of the time. So it's completely distinguishable. Yes, but it still has the same principle that we don't require clairvoyance or omniscience from an immigration judge who is interpreting as the law stands at that time. Okay. Is Payaris-Gallon distinguishable on that basis? How would you distinguish that case? And that would be mispronounced, P-A-L-L-R-E-S-Gallon. I'm sorry. That was a case that invalidated an appellate waiver when the IJA failed to inform an alien that the offense was not an aggregated felony. But the IJA was applying law that was not incorrect at the time. It was determined to be incorrect in that case itself. I apologize. You're not going to hear that? All right. I apologize. Well, in this case, the court did not err in denying the defendant's motion to really suppress, it's a motion to suppress, not dismiss, but to suppress his deportation because it was valid. He did not satisfy all the prongs of the 1326D because his order had become final. It was a, there's no due process violation because the immigration judge applied the interpretation of the law at that time. The defendant did not exhaust his administrative rights because he had, as open as everyone who eventually appealed this issue, the same right to appeal. And in this case, the judge said, do you wish to appeal? And he said, yes. The judge then stepped back and said, if you don't appeal, you will lose your legal right to be in here in the United States forever. Do you still want to appeal? And he said, no, I don't. And then, really, if we extrapolate the subsequent proceedings, there really is no prejudice. The argument here is that the reinstatement deprived him of the ability to go back and contest the recent interpretation that DUI was not an issue. How do you distinguish Camacho-Lopez? It seems exactly on point in that we held it was retroactive and you could call it an attack. Well, as I said, this is a very unusual situation in that we have someone who had a deportation where it was an aggravated felony at the time. It was later determined not to be an aggravated. No, it wasn't an aggravated. It hadn't been determined to be an aggravated felony at the time, and no statute or law or anything said it was. It was believed to be an aggravated felony at the time, based upon the interpretation of 11-01-42. That was the same situation as Camacho-Lopez. Right. Very well. And it was held, when it was interpreted correctly, that he could collaterally attack. Yes, a collateral attack upon a civil proceeding where the judge had knowledge of the law at that time, and then things were later interpreted. So if you have any other questions, I would submit them. Does anyone have any other questions? No. No. All right. Thank you very much. Do you have any points you want to make? No. Okay. Thank you. Let's see. United States v. Ramos is submitted. United States v. Ortiz-Ledezma is also submitted on briefs. And United States v. Olivas is submitted. And this session of the court shall be adjourned for today. All rise.
judges: Trott, Wardlaw, Ikuta